# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIXTA CHEONG CHAN,<br>(A Number: 214-785-115)<br><br>Petitioner,<br>v.<br><br>MARKWAYNE MULLIN, *Secretary, U.S. Dep't of Homeland Sec.*, et al.,<br><br>Respondents. | Case No.  1:26-cv-01667-JLT-EGC<br><br>**FINDINGS & RECOMMENDATION THAT PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION BE GRANTED**<br><br>(Doc. 9)<br>] |

On March 1, 2026, Petitioner Calixta Cheong Chan, represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging her detention by United States Immigration and Customs Enforcement ("ICE").  (Doc. 1).  After the Court denied Petitioner's motion for temporary restraining order, (Doc. 2), as untimely, (Doc. 4), Petitioner filed a motion for preliminary injunction, (Doc. 10), which was referred to the undersigned for the preparation of findings and recommendations, (Doc. 11).  On May 28, 2026, Respondents filed an opposition to the motion.  (Doc. 12).

For the reasons that follow, the undersigned recommends that the Court grant the motion.

## I.    BACKGROUND

Petitioner is a citizen of Panama who entered the United States on a visitor visa on July 17, 2027.  (Doc. 1 ¶ 43).  She then married a U.S. citizen later that year and initiated the process to become a lawful permanent resident.  (*Id.*).  Upon her appearance for an interview related to that application, Petitioner was questioned about her daughter from a prior relationship at which point she was informed that there had been an Interpol Red Notice issued for Petitioner's arrest

related to allegations from a former partner that Petitioner had kidnapped their daughter. (*Id.*). At this time, Petitioner was arrested and placed in removal proceedings. (*Id.*). The Interpol warrant was then withdrawn and on September 17, 2018, Petitioner was released from immigration detention after posting a $15,000 bond. (*Id.*).

Petitioner's first husband ultimately withdrew the family petition submitted in 2017 upon their divorce. (*Id.* ¶ 44). At this time, Petitioner filed a self-petition seeking protection under the Violence Against Women Act ("VAWA") based on the abuse she alleged she suffered at the hands of her first husband. (*Id.*). In 2022, Petitioner married her second husband, a U.S. citizen with a U.S. citizen child from a prior relationship, who filed a family petition, resulting in Petitioner's self-petition under the VAWA to be denied. (*Id.*). On June 10, 2024, Petitioner's removal proceedings were administratively closed to allow United States Citizenship and Immigration Services to adjudicate that petition. (*Id.*).

On September 3, 2025, Petitioner was re-detained by ICE upon appearing in their office to request a time change as to an in-person appointment scheduled for September 5, 2025, which conflicted with her son's school schedule. (*Id.* ¶ 46). When she arrived on September 3, 2025, Petitioner was arrested and informed that her bond was being revoked due to a child endangerment detention by the state. (*Id.*). That detention had not resulted in any charges and Child Protective Services determined the allegations of child abuse that were the basis of that detention were unfounded. (*See* Doc. 1-3 at 21–23).

At the request of the Department of Homeland Security, Petitioner's removal proceedings were re-calendared after she was re-detained. (*Id.* ¶ 47).

On October 21, 2025, an immigration judge denied any form of release or bond. (Doc. 1-3 at 6–9). Petitioner has been detained for approximately ten months at the California City Detention Facility in California City, California. (*Id.* ¶ 46).

## II.    LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). To obtain injunctive relief, the moving party must show: (1)

a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest.  *See id.* at 20.

### III.   DISCUSSION

**A.   Likelihood of Success on the Merits[1]**

Petitioner claims that Respondents violated her right to procedural due process by re-detaining her without a pre-deprivation hearing.  (*See* Doc. 1 at 9–12).

To establish a valid procedural due process claim, a petitioner must, as a threshold matter, show "a deprivation of a constitutionally protected liberty or property interest."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  Petitioner argues that she had a protected liberty interest in her freedom from re-incarceration following her initial release on bond.  (*See* Doc. 1 at 9–12; Doc. 9 at 18–22).

In a variety of contexts, the Supreme Court has repeatedly found that individuals possess a protected liberty interest against re-incarceration following even a conditional release from imprisonment.  *See*, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding protected liberty interest in revocation of parole); *Young v. Harper*, 520 U.S. 143, 147–49 (1997) (pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation). As numerous courts within the Ninth Circuit have recognized, noncitizens living in the United States under an order that permits their conditional release from custody have a protected liberty interest.  *See*, *e.g.*, *J.A.E.M. v. Wofford*, No. 1:25-CV-01380-KES-HBK (HC), 2025 WL 3013377, at *4 (E.D. Cal. Oct. 27, 2025); *Banol v. Warden*, No. 5:26-CV-00529-CAS-ACCV, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026); *Lucas v. LaRose*, No. 3:25-CV-02973-GPC-JLB, 2025 WL 3485163, at *5 (S.D. Cal. Dec. 4, 2025).

The Ninth Circuit has assumed without deciding that the balancing test articulated in *Matthews v. Eldridge*, 424 U.S. 319 (1976), applies to procedural due process claims in the

---

[1] Petitioner also argues that she is likely to succeed on her claims that her prolonged and indefinite detention violate her right to due process and that the immigration judge's denial of bond violated the Administrative Procedure Act. (Doc. 9 at 16–18, 23–25).  Because the undersigned finds that Petitioner likelihood of success on his procedural due process claim supports the issuance of a preliminary injunction, the undersigned need not consider Petitioner's other arguments here.

immigration context.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts within the Ninth Circuit have similarly applied the *Matthews* test to procedural due process claims challenging immigration detention.  *See Hogarth v. Santacruz*, No. 5:25-CV-09472-SPG-MAR, 2025 WL 3211461, at *6 (C.D. Cal. Oct. 23, 2025) (collecting cases).

In *Matthews*, the Supreme Court described three factors that courts should consider in assessing a due process claim: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.  Applying this framework to the facts of the instant case, the undersigned finds that Petitioner is likely to succeed on the merits of her claim that Respondents violated her right to procedural due process.

First, Petitioner has a strong liberty interest in her continued freedom on conditional release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.*"* *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The protection afforded by the Due Process Clause "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693.  In the years since Petitioner was released on bond, she married a U.S. citizen and is raising a U.S. citizen child in the United States. (*See* Doc. 1 ¶¶ 6, 43).  Thus, as in *Morrissey*, Petitioner "relied on at least an implicit promise" that she would not be re-detained absent a change in circumstances to justify the revocation of her bond.  *See Morrissey*, 408 U.S. at 482.

Second, the process Respondents followed in re-detaining Petitioner carries a significant risk of erroneous deprivation.  Here, by releasing Petitioner on bond, the Government already determined that Petitioner "would not pose a danger to property or persons" and "is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  Respondents then re-detained Petitioner without providing notice of ICE's intention to re-detain and revoke her bond.  (*See* Doc. 1 ¶ 7).  Respondents also failed to provide Petitioner with a pre-deprivation hearing, which is

4

normally required absent "extraordinary" circumstances. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); *J.C.E.P. v. Wofford*, No. 1:25-cv-01559-EFB, 2026 WL 809865 (E.D. Cal. March 24, 2026) ("The requirements of due process, of course, supersede statutory and regulatory authority, and numerous courts have held that the Due Process clause entitles a noncitizen to notice and an opportunity to be heard before his parole or bond is summarily revoked under section 1226(b)."); *Guzman v. Andrews*, No. 1:25-cv-01015-KES-SKO (HC), 2025 WL 2617256, at *2 (E.D. Cal. Sept. 9, 2025) (pre-detention hearing required prior to revocation of the petitioner's release on bond). Respondents do have not articulated that any such extraordinary circumstance exists.

Finally, the undersigned concludes that Respondents had no countervailing interest that would outweigh Petitioner's interest in a pre-deprivation hearing. *See Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *3 (E.D. Cal. Mar. 24, 2026); *see also Hasratyan v. Bondi*, No. 5:26-CV-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (collecting cases for the proposition that "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens . . . without a pre-detention hearing"); *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he government's interest in re-detaining Petitioner-Plaintiff without a hearing is 'low,' particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements.").

In considering the proper remedy on Petitioner's due process claim, the undersigned is cognizant of the fact that an immigration judge has since determined that Petitioner poses a flight risk and danger to the community. (*See* Doc. 1-3 at 9). However, other courts within the Ninth Circuit have concluded that "a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-CV-00541-AH-(MBK), 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *see also Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD,

2026 WL 809990, at *3 (E.D. Cal. Mar. 24, 2026) ("Respondents argue that petitioner has received all the process due to her because she received a post-deprivation bond hearing. . . . The court disagrees."); *Mumaev v. Semaia*, No. 5:25-CV-03409-FLA (MAR), 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026) (ordering petitioner's release from custody where the government failed to provide a pre-deprivation hearing, notwithstanding an immigration judge's subsequent determination that petitioner posed a flight risk); *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."); *Hasratyan v. Bondi*, No. 5:26-CV-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the ... initial failure to provide a hearing."). The undersigned therefore finds that the immigration judge's subsequent denial of Petitioner's release on bond does not cure Respondents' failure to provide Petitioner with notice and the opportunity to be heard *before* revoking her release on parole.

In sum, the undersigned finds that Petitioner is likely to succeed on her procedural due process claim.

**B.    Irreparable Harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where the alleged deprivation of a constitutional right is involved, most courts hold that

6

no further showing of irreparable injury is necessary. *See Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Given that Petitioner has been detained for almost ten months likely in violation of her procedural due process rights, the undersigned finds that she would be irreparably harmed by the continued deprivation of her liberty in violation of her due process rights.

**C.      Balance of the Equities & Public Interest**

As for the balance of equities and the public interest factors of the inquiry, these factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This inquiry favors Petitioner. Although the Government has a strong interest in enforcing the immigration laws, the Government's interest in detaining Petitioner without appropriate statutory authority and in violation of her due process rights is low. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). As such, the undersigned finds that the equities lean towards Petitioner.

**IV.      CONCLUSION**

For the foregoing reasons, it is HEREBY RECOMMENDED that the Court enter an order as follows:

1.      Petitioner's motion for a preliminary injunction, (Doc. 10), be GRANTED.

2.      Respondents IMMEDIATELY RELEASE Petitioner from custody.

3.      Respondents SHALL not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

4.      If the Government seeks to re-detain Petitioner, it SHALL provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter.

5.      Respondents be ORDERED TO SHOW CAUSE why this Court should not enter final judgment on the merits of Petitioner's Habeas Petition.

6.      The bond requirement of Federal Rule of Civil Procedure 65(c) be WAIVED.[2]

---

[2] Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

These Findings and Recommendation will be submitted to the assigned United States District Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(l)(B).  Within seven (7) days after being served with these Findings and Recommendation, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 30, 2026**                                    

UNITED STATES MAGISTRATE JUDGE

8