**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIXTA C.-C.,<br>(A Number: 214-785-115)<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, *Secretary, U.S. Dep't of Homeland Sec.*, et al.,<br><br>Respondents. | Case No. 1:26-cv-01667 JLT EGC (HC)<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS IN PART<br><br>(Doc. 15) |

## I. INTRODUCTION

Calixta C.-C. is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The magistrate judge's summary of the facts provides a helpful starting point:

> Petitioner is a citizen of Panama who entered the United States on a visitor visa on July 17, [2017]. (Doc. 1 ¶ 43). She then married a U.S. citizen later that year and initiated the process to become a lawful permanent resident. (*Id.*). Upon her appearance for an interview related to that application, Petitioner was questioned about her daughter from a prior relationship at which point she was informed that there had been an Interpol Red Notice issued for Petitioner's arrest related to allegations from a former partner that Petitioner had kidnapped their daughter. (*Id.*). At this time, Petitioner was arrested and placed in removal proceedings. (*Id.*). The Interpol warrant was then withdrawn and on September 17, 2018, Petitioner was released from immigration detention after posting a $15,000 bond. (*Id.*)

> Petitioner's first husband ultimately withdrew the family petition submitted in 2017 upon their divorce. (*Id.* ¶ 44). At this time, Petitioner filed a self-petition seeking protection under the Violence Against Women Act ("VAWA") based on the abuse she alleged she suffered at the hands of her first husband. (*Id.*). In 2022, Petitioner married her second husband, a U.S. citizen with a U.S. citizen child from a prior relationship, who filed a family petition, resulting in Petitioner's self-petition under the VAWA to be denied. (*Id.*) On June 10, 2024, Petitioner's removal proceedings were administratively closed to allow United States Citizenship and Immigration Services to adjudicate that petition. (*Id.*)
>
> On September 3, 2025, Petitioner was re-detained by ICE upon appearing in their office to request a time change as to an in-person appointment scheduled for September 5, 2025, which conflicted with her son's school schedule. (*Id.* ¶ 46). When she arrived on September 3, 2025, Petitioner was arrested and informed that her bond was being revoked due to a child endangerment detention by the state. (*Id.*). That detention had not resulted in any charges and Child Protective Services determined the allegations of child abuse that were the basis of that detention were unfounded. (*See* Doc. 1-3 at 21−23).
>
> At the request of the Department of Homeland Security, Petitioner's removal proceedings were re-calendared after she was re-detained. (*Id.* ¶ 47).
>
> On October 21, 2025, an immigration judge denied any form of release or bond. (Doc. 1-3 at 6−9). Petitioner has been detained for approximately ten months at the California City Detention Facility in California City, California. (*Id.* ¶ 46).

(Doc. 15 at 1–2.)

Petitioner initiated this action on March 1, 2026. (Doc. 1.) The original Petition alleged that Petitioner's September 3, 2025 re-detention without a pre-deprivation hearing was conducted without proper process and in an arbitrary manner in violation of her due process rights. (*Id.*) On June 30, 2026, the assigned magistrate judge permitted amendment of the Petition to add a prolonged detention claim and a claim under the Administrative Procedure Act. (Docs. 9-1, 14.) That same day, the assigned magistrate judge issued findings and recommendations to grant Petitioner's motion for a preliminary injunction (Doc. 10), and further recommended that the Court order Respondents to release Petitioner immediately. (Doc. 15.) For the reasons set forth below, the Court declines to adopt the findings and recommendations, denies the motion for a preliminary injunction, and sets a deadline for a joint status report regarding the need for further proceedings.

## II. DISCUSSION

### A. Procedural Due Process Claim

In evaluating likelihood of success on the merits in relation to the motion for preliminary injunction, the findings and recommendations addressed only Petitioner's claim that Respondents violated her right to procedural due process by re-detaining her without a pre-deprivation hearing. (*See* Doc. 15 at 3 n. 1.) As the findings and recommendations recognize (Doc. 15 at 3–4), *Mathews v. Eldridge*, provides the relevant framework and requires a court to consider the following factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Though the recommendation of immediate release finds some support in non-binding caselaw (*see* Doc. 15 at 5), the facts of this case place Petitioner squarely within the category of cases in which the undersigned has found that due process requires a bond hearing. *See, e.g.*, *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *15 (E.D. Cal. Oct. 16, 2025); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *2 (E.D. Cal. Nov. 3, 2025); *J.E.H.G. v. Chesnut*, No. 1:25-CV-01673-JLT SKO, 2025 WL 3523108, at *12 (E.D. Cal. Dec. 9, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016, at *2 (E.D. Cal. Dec. 4, 2025); *Wafaie v. Chesnut*, No. 1:26-CV-00370 JLT SKO (HC), 2026 WL 263362, at *5 (E.D. Cal. Feb. 2, 2026); *see also Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution," even though the disposition of that matter was unknown).[1]

The Court reaches this conclusion because Petitioner's release in 2018 was conditioned on a number of requirements, including that she not commit any crimes and that she successfully

[1] The Court has broad discretion to fashion habeas remedies. *See* 28 U.S.C. § 2243 (authorizing federal courts to dispose of habeas corpus matters "as law and justice require"); *see also Chioino v. Kernan*, 581 F.3d 1182, 1184 (9th Cir. 2009).

participate in the Alternatives to Detention program. (Doc. 6-2.) Petitioner alleges that on the date of her re-detention, she was provided only one reason that her release on bond was being revoked: her 2024 child endangerment arrest. (Doc. 1, ¶ 7.) She informed the immigration officer that those charges were deemed "unfounded," (*id*.), and documentation demonstrating as much is attached to the Petition. (Doc. 1-3 at 22.)[2] Even if that arrest did not constitute a legitimate basis to believe Petitioner had violated the terms of her release, the I-213 prepared on the day of her re-detention documents that Petitioner had numerous ATD violations as well as other interactions with the criminal justice system since her release on bond in 2018. (Doc. 1-3 at 25.) Petitioner does not dispute that she incurred ATD violations, (*see* Doc. 1-2, ¶ 18 (Petitioner indicating "I did not know that by checking in late, I was marked for violating.")), and confirms that she completed pre-plea diversion related to a 2022 arrest for resisting, obstructing, or delaying an officer. (*Id*. at 14.) Given these facts, assuming arguendo that Petitioner had not yet been provided any form of custody redetermination hearing, the Court would have ordered Respondents to provide Petitioner with a prompt bond hearing at which Respondent would bear the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. *See J.S.H.M*, 2025 WL 2938808, at *17 (relying on *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025), for the proposition that the burden should be on Respondents where the non-citizen was previously detained and then released because that release necessarily required a finding that the non-citizen was neither a flight risk nor a danger to the community).

However, as noted, Petitioner received a formal custody redetermination hearing before an Immigration Judge on October 21, 2025, well before she initiated this action. (Doc. 1-3 at 7.) Release was denied after the IJ found that Respondents had demonstrated by clear and

---

[2] The documentation is attached to the Petition. However, it is not entirely clear when those documents were provided to Respondents. Thus, at the time of her re-detention, it may not have been clear that the child endangerment allegations had been deemed unfounded. Moreover, the "unfounded" finding does not necessarily render the underlying facts irrelevant. *See Singh v. Chestnut*, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2, 4 (E.D. Cal. Feb. 2, 2026) ("That Petitioner was not charged does not mean that the events did not occur, and the Immigration Judge may consider them in determining whether and under what conditions to set bond."). Nonetheless, the Court does not rely on this information to make a finding that a bond hearing is the appropriate outcome here.

convincing evidence that Respondent is both a danger to the community and a flight risk. (*Id.*) The IJ's written ruling explains:

> In the present matter, the Court considered both the positive and negative equities in Respondent's case. The positive equities are the Respondent's family ties. The negative equities consist of the Respondent's ongoing and recent criminal history. The Court also considered that the Respondent may have memory problems. Given the Respondent's criminal record, including the number of arrests for significant criminal activity, the recency of such activity, and the seriousness of the offenses, the Court found that the DHS had established by clear and convincing evidence that the Respondent is a danger to the community. The Court also notes that these arrests occurred while the Respondent was in removal proceedings and while out on a bond issued by the Immigration Court.
>
> The Court also found that the DHS had established by clear and convincing evidence assessed the Respondent to be a flight risk. In this regard, while the Respondent has appeared for her removal proceedings, she has violated the terms of her immigration bond by violating the terms of the Alternatives to Detention program administered by the DHS. The Respondent's criminal conduct and conduct with the ATD program demonstrates that she is unable to comply with conditions of release, orders of the Court, and the laws of the United States. The Court understands that the Respondent has ties to the community, but given the Respondent's inability to comply with orders, the Court finds that she would be unable to abide by any further bond order and is a risk of flight.

(Doc. 1-3 at 8.)

Notwithstanding that the IJ explicitly found Respondents demonstrated danger and flight risk by clear and convincing evidence, Petitioner argues that the decision "effectively placed the burden on Petitioner" because the IJ "found her to be a danger and a flight risk despite the absence of any conviction and consistent appearance at all prior court hearings." (Doc. 1, ¶ 74.) Relatedly, Petitioner contends the IJ mischaracterized her arrests as criminal activity even though only one resulted in a court filing and that matter was dismissed." (*Id.*) Yet in making these determinations, IJs may properly "consider not only the nature of a criminal offense but also the specific circumstances surrounding [Petitioner's] conduct," *Matter of Siniauskas*, 27 I&N Dec. 207, 208-09 (BIA 2018), as well as "any unfavorable evidence of [her] conduct, including arrests that did not ultimately result in conviction." *Matter of Urena*, 25 I&N Dec. 140, 140 (BIA 2009). As this Court has found in a related context: "Complaints about application of BIA case law to Petitioner and the ultimate the conclusion the IJ reached must be

presented through the normal immigration appeal process." *J.H.R.G. v. Andrews*, No. 1:26-CV-01389-JLT-EPG, 2026 WL 1454005, at *3 (E.D. Cal. May 22, 2026). Thus, the Court concludes that the bond hearing Petitioner already received is equivalent to the one the Court would have ordered. Thus, at least in relation to Petitioner's procedural due process claim, no additional or substitute procedural protections are required.[3]

**B. Prolonged Detention Claim**

Petitioner also advances a substantive due process prolonged detention claim premised upon the contention that her detention has become unreasonably prolonged. (*See* Doc. 9-1, ¶¶ 78–89.) In evaluating related claims, this Court has applied the test from *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022), in which the court evaluated whether a detention had become unreasonable when by weighing (1) the length of the detention to date, (2) the likely duration of future detention, and (3) delays attributable to each party. *See Doe v. Andrews*, No. 1:25-CV-00333-JLT-HBK (HC), 2026 WL 797694, at *10 (E.D. Cal. Mar. 23, 2026) (applying Lopez to prolonged detention under 8 U.S.C. § 1225(b)). Petitioner argues that all three factors favor her, because she has now been detained for a total of more than 10 months; there "is no end in sight" to her detention because her family petition is a pre-requisite to resolving Petitioner's case and that matter has been pending for four years without adjudication; and Petitioner bears no responsibility for that delay. (Doc. 10-2 at 17.) Notably, however, neither *Lopez* nor Petitioner's briefing addresses a situation in which the petitioner is requesting a <u>second</u> bond hearing. Rather, Petitioner's claim presumes that the Court will find the October 21, 2025 bond hearing constitutionally infirm. Because the Court found those arguments unpersuasive, it likewise cannot find likely merit in her prolonged detention claim as currently presented.

---

[3] Relatedly, Petitioner expresses concern about "whether bond hearings in Immigration Court currently provide a neutral and impartial forum" and attaches secondary sources regarding "the transformation of the Immigration Courts into an enforcement mechanism arm of the administration." Doc. 9-1, ¶ 89.) As one judge of this Court recently indicated: "The Court appreciates Petitioner's concerns, but Petitioner has not established that due process requires in his particular case that a bond hearing be held by the district court." *Qaisar v. Warden*, No. 2:26-CV-00425 KES SAB (HC), 2026 WL 1102964, at *7 (E.D. Cal. Apr. 23, 2026), *report and recommendation adopted*, No. 2:26-CV-00425-KES-SAB (HC), 2026 WL 1286874 (E.D. Cal. May 11, 2026)

**C. APA Claim**

Finally, the Amended Petition contains an APA claim in which she requests that this Court set aside the IJ's bond determination as an abuse of discretion because the IJ did not follow BIA precedent. (Doc. 9-1, ¶¶ 90–93.) The Court finds that Petitioner is not likely to succeed on this claim either for the reasons already articulated: "Complaints about application of BIA case law to Petitioner and the ultimate the conclusion the IJ reached must be presented through the normal immigration appeal process." *J.H.R.G.*, 2026 WL 1454005, at *3. This is because the Court lacks jurisdiction to entertain claims that challenge an IJ's discretionary determinations about bond status, including how an IJ weighed relevant factors. 8 U.S.C. § 1226(e); *see also Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (explaining that if an immigration court "expressly cited and applied the relevant case law in rendering its decision," the Court accepts that it "applied the correct legal standard," unless there is an indication that "something is amiss." Though there may be some limited exceptions to this rule, the record does not obviously implicate any.

**III. CONCLUSION AND ORDER**

For the reasons set forth above, the Court cannot find Petitioner is likely to succeed on the merits of her Petition. Thus:

1. The Court declines to adopt the findings and recommendations issued June 30, 2026. (Doc. 15.)
2. The motion for a preliminary injunction (Doc. 10) is **DENIED.**
3. Given the findings above, within 14 days of the date of this order, the parties shall meet and confer before submitting a joint status report indicating whether there is any need for further proceedings in this matter or, alternatively, whether the Court should address the merits of the Petition on the current record.

IT IS SO ORDERED.

Dated: July 24, 2026

[signature: Jennifer L. Thurston]
UNITED STATES DISTRICT JUDGE